# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FEDERAL WAREHOUSE COMPANY and FEDERAL/WHALEN MOVING AND STORAGE, LLC, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No.<br>) |
| v. | )<br>) **Plaintiffs Demand Trial By Jury** |
| ARCH INSURANCE COMPANY, | )<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs, Federal Warehouse Company ("FWC") and Federal/Whalen Moving and Storage, LLC ("Whalen") (collectively, "Federal"), by and through their attorneys, Quarles & Brady LLP, for their Complaint against Defendant, Arch Insurance Company ("Arch"), allege as follows:

## NATURE OF THE CASE

1. This is an insurance coverage lawsuit arising out of Arch's breach of its coverage obligations to Federal with respect to an insurance claim made by Federal for loss resulting from the theft of Federal's property and/or money by an employee of Whalen and/or a third-party acting in collusion with an employee of Whalen.

## PARTIES, JURISDICTION AND VENUE

2. FWC is an Illinois corporation with its principal place of business located in East Peoria, Illinois.

3. Whalen is an Illinois limited liability company. Its sole member is FWC.

4. Arch is a Missouri corporation with its principal place of business in Jersey City, New Jersey.

5. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. This Court therefore has jurisdiction of this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS UNDERLYING THE INSURANCE CLAIM

6. On or around June 22, 2017, Whalen entered into a contract (the "TUF Contract") with TUF Partners, LLC ("TUF") for the removal of certain Furniture, Fixtures, and Equipment ("FF&E") from 1195, 1301, 1297, and 1195 E. Algonquin Road in Schaumburg, Illinois (the "Motorola Site").

7. Under the TUF Contract, TUF assigned its interest in the FF&E located at the Motorola Site to Whalen, and, in exchange, Whalen agreed to provide labor and management services to disassemble and remove the FF&E located at the Motorola Site (the "Motorola Project").

8. Domenick Shanholtzer ("Shanholtzer") was an employee of Whalen who, at all times relevant hereto, served as Whalen's project lead in connection with the Motorola Project.

9. To assist Whalen with the Motorola Project, Shanholtzer represented to Whalen that he secured an agreement with ChairTech, LLC ("ChairTech") whereby Whalen would decommission the FF&E from the Motorola Site and ChairTech would assume the risk of selling the FF&E in exchange for its agreement to pay Whalen's invoices associated with the Motorola

2

Project. Whalen's invoices consisted of Whalen's labor and management costs plus a profit margin.

10. Upon information and belief, United Asset Management ("UAM") and Metal Solutions Chicago ("Metal Solutions") were either hired by Shanholtzer and/or ChairTech to assist ChairTech in removing FF&E from the site for sale or had purchased FF&E directly from ChairTech.

11. The Motorola Project commenced on July 5, 2017.

12. Between July 5, 2017 and September 22, 2017, most of the valuable FF&E was removed from the Motorola Site by ChairTech, UAM, and/or Metal Solutions.

13. Between August 8, 2017 and September 25, 2017, Whalen submitted invoices to ChairTech for payment (the "Invoices").

14. When the Invoices remained unpaid as of September 12, 2017, Whalen questioned Shanholtzer as to the status of payment by ChairTech. In response, Shanholtzer represented that a check from ChairTech for payment of the Invoices had been sent and Whalen should receive payment shortly.

15. Whalen never received payment of the Invoices.

16. On September 22, 2017, Shanholtzer's employment with Whalen was terminated.

17. Whalen's subsequent investigation revealed that Shanzholtzer and/or ChairTech, in collusion with Shanholtzer while Shanholtzer was employed by Whalen, sold FF&E from the Motorola Site to UAM and/or Metal Solutions. Whalen's subsequent investigation also revealed that Shanholtzer and ChairTech's CEO maintained a joint bank account.

18. Shanzholtzer committed theft when, while employed by Whalen, he stole Whalen's FF&E.

3

19. Shanzholtzer committed theft when, while employed by Whalen, he stole the proceeds from the sale of Whalen's FF&E.

20. Shanzholtzer committed theft when, while employed by Whalen, he stole the money ChairTech paid in connection with the Invoices.

21. Shanzholtzer committed theft when ChairTech, in collusion with Shanzholtzer while Shanholtzer was employed by Whalen, stole Whalen's FF&E.

22. Shanzholtzer committed theft when ChairTech, in collusion with Shanzholtzer while Shanholtzer was employed by Whalen, stole the proceeds from the sale of Whalen's FF&E.

23. The fair market value of the FF&E stolen from Whalen by Shanzholtzer and/or Chairtech is in excess of $75,000.

24. The amount of proceeds from the sale of the FF&E stolen from Whalen by Shanzholtzer and/or Chairtech is in excess of $75,000.

25. The amount of the Invoices exceeds $75,000.

26. Federal provided timely notice to Arch of its loss resulting from the aforementioned theft and which included Federal's costs to investigate the theft (the "Claim").

27. Arch denied the Claim in a letter to Federal dated December 13, 2019.

## THE ARCH POLICY

28. Arch issued a combined Directors, Officers, & Organization Liability, Employment Practices Liability, Fiduciary Liability, and Crime insurance policy (the "Arch Policy") to Federal, covering the period from October 1, 2017 to October 1, 2018, Policy No. PCD9303553-01.

29. The Arch Policy provides in relevant part as follows:

**CRIME COVERAGE PART**

1. **INSURING AGREEMENTS**

    A. **Employee Theft**

    The **Insurer** shall pay **Loss** by an **Insured** resulting from any **Employee**, acting alone or in collusion with others, committing any:

    1. **Theft** of **Money**, **Property**, or **Securities**; or

    2. **Forgery**.

    \*\*\*

2. **DEFINITIONS**

    \*\*\*

    I. "**Employee**" means any:

    **1.** natural person whose labor or service is engaged and directed by any **Insured Organization**, including fulltime, part-time, seasonal, leased and temporary employees as well as volunteers; or

    **2.** natural person fiduciary, trustee, administrator or employee of a **Sponsored Plan** and any other natural person required to be bonded in connection with a **Sponsored Plan** by Title 1 of **ERISA**.

    **Employee** shall not include any: (i) **Executive** except to the extent that such person is performing acts coming within the scope of the usual duties of a nonexecutive activities; or (iii) **Independent Contractor**.

    \*\*\*

    O. "**Insureds**" means any:

    1. **Insured Organization**; or

    2. **Sponsored Plan**.

    \*\*\*

    P. "**Investigation Costs**" means reasonable and necessary expenses incurred by an **Insured** with the **Insurer's** prior written consent to establish the existence and

5

amount of a covered **Loss**. **Investigation Costs** shall not include any compensation, benefit expenses, or overhead of any **Insureds** or any expenses incurred by any **Customer**.

Q. "**Loss**" means direct loss sustained. If Investigation Costs Coverage is elected in Item 6 of the Declarations, **"Loss"** shall also mean **Investigation Costs**.

R. "**Money**" means currency, coin, and bank notes in current use and having a face value.

\*\*\*

T. "**Property**" means tangible property other than **Money** or **Securities**. **Property** shall not include **Data**.

\*\*\*

Z. "**Theft**" means any unlawful taking.

\*\*\*

**GENERAL PROVISIONS**

\*\*\*

**2. DEFINITIONS**

\*\*\*

K. **"Insured Organization"** means:

1. the **Named Organization**; or

2. any **Subsidiary**;

\*\*\*

Q. "**Named Organization**" means the organization named in Item 1 of the Declarations.

\*\*\*

U. "**Subsidiary**" means any:

**1.** corporation in which, and for as long as, the **Named Organization** owns or controls, either directly or indirectly, more than 50% of the

6

outstanding securities representing a present right to vote for the election of the board of directors of such corporation;

**2.** limited liability company in which, and for as long as, the **Named Organization** owns or controls, either directly or indirectly, the right to elect, appoint or designate more than 50% of the members of the board of managers or management committee of such limited liability company;

**3.** joint venture corporation or limited liability company in which, and for as long as, the **Named Organization**: (i) owns or controls, either directly or indirectly, exactly 50% of the outstanding securities representing a present right to vote for the election of the board of directors of such corporation or the right to elect, appoint or designate exactly 50% of the members of the board of managers or management committee of such limited liability company; and (ii) solely controls the management and operations of such organization pursuant to a written agreement with the other owners of such organization; or

**4.** foundation, charitable trust, or political action committee in which, and for as long as, the **Named Organization** exclusively sponsors such entity or organization.

***

## Count I
## (Breach of Contract)

30. Federal incorporates by reference the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

31. Federal is an Insured under the Arch Policy.

32. The Claim constitutes Loss under the Arch Policy.

33. Shanzholtzer's theft of the FF&E constitutes Theft of Property under the Arch Policy.

34. Shanzholtzer's theft of the proceeds from the sale of the FF&E constitutes Theft of Money under the Arch Policy.

35. Shanzholtzer's theft of the money ChairTech paid in connection with the Invoices constitutes Theft of Money under the Arch Policy.

7

36. ChairTech's theft of the FF&E, committed in collusion with Shanzholtzer while he was employed by Whalen, constitutes Theft of Property under the Arch Policy.

37. ChairTech's theft of the proceeds from the sale of the FF&E, committed in collusion with Shanzholtzer while he was employed by Whalen, constitutes Theft of Money under the Arch Policy.

38. Pursuant to the Arch Policy, Arch has a duty to pay the Claim because it consists of Loss resulting from Shanzholtzer, acting alone or in collusion with others, committing Theft of Money and/or Property and Investigation Costs.

39. Federal has complied with all terms and conditions of the Arch Policy and no exclusions apply to bar coverage.

40. Arch has failed and refused to pay the Claim.

41. Arch's failure and refusal to pay the Claim constitutes a breach of the Arch Policy.

42. Arch's breach of the Arch Policy has caused damage to Federal and will continue to cause damage to Federal.

**Count II**
**(Violation of Section 155 of the Illinois Insurance Code – 215 ILCS 5/155)**

43. Federal incorporates by reference the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

44. Section 155 of the Illinois Insurance Code (215 ILCS 5/155) provides in relevant part as follows:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow

>as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
>(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>(b) $60,000;
>(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

***

45. Arch's failure and refusal to pay the Claim is vexatious and unreasonable under the circumstances because the Claim consists of Loss resulting from Shanzholtzer, acting alone or in collusion with others, committing Theft of Money and/or Property and Investigation Costs, and Arch has no reasonable basis in law or fact to deny the Claim.

WHEREFORE, Plaintiffs, Federal Warehouse Company and Federal/Whalen Moving and Storage, LLC (collectively, "Federal"), pray that this Court enter judgment as to Defendant Arch Insurance Company:

(a) awarding Federal a money judgment for the amounts it is entitled to recover under the Arch Policy and/or as damages;

(b) awarding Federal all attorney fees and expenses incurred in this action as allowed by law or equity;

(c) awarding Federal all statutory damages;

(d) awarding Federal all punitive and exemplary damages allowed by law or equity;

(e) awarding Federal all interest on the above amounts allowed by law or equity, including pre- and post-judgment interest; and

(f) awarding Federal such other and further relief as this Court deems necessary, proper and just.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL COUNTS, ISSUES AND CLAIMS REFERABLE TO A JURY**

Dated: April 29, 2020

Respectfully Submitted,

FEDERAL WAREHOUSE COMPANY and FEDERAL/WHALEN MOVING AND STORAGE, LLC

By:   /s/ Paul L. Langer
       One of Its Attorneys

Paul L. Langer (#6189216)
John A. Aramanda (#6323576)
Quarles & Brady LLP
300 N. LaSalle St., Ste. 4000
Chicago, IL 60654
T: 312/715-5000 | F: 312/715-5155
Paul.Langer@quarles.com
John.Aramanda@quarles.com